IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KELLY HARPER,

                            Petitioner,                         OPINION and ORDER

    v.

                                                                   22-cv-316-wmc

UNITED STATES OF AMERICA,                       21-cr-018-wmc

                            Respondent.

---

This opinion and order addresses Kelly Harper's postconviction motions in her criminal case, as well as other pending motions in her related § 2255 proceeding. Following a plea of guilty to the charge of murder-for-hire in violation of 18 U.S.C. § 1958(a), this court sentenced Harper to 72 months of imprisonment, followed by three years of supervised release. Harper has since filed various motions challenging her conviction and sentence, and seeking compassionate release, as well as addenda in support of those motions and multiple motions to expedite the court's rulings. (CR dkt. ##102, 103, 104, 106, 107, 109, 111, 113, 114, 115.) The court wo;; deny these motions for the reasons explained below.

As for Harper's motion for post-conviction relief under 28 U.S.C. § 2255, she principally claims ineffective assistance of counsel, prosecutorial misconduct, and sentence disparity. (CV dkt. #1; CR dkt. #67.)[1] However, Harper cannot prevail on any of these

---

[1] This opinion and order references the dockets in Harper's criminal case, case no. 21-cr-018-wmc, and in her § 2255 civil proceeding, case no. 22-cv-316. The court will use "CR" to indicate docket entries in her '018 criminal case and "CV" to indicate docket entries in her '316 civil case.

1

grounds.² Specifically, she has not demonstrated that her counsel was ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1994). Nor has she made any of the required showings to bring a claim of prosecutorial misconduct outlined in *United States v. Frady*, 456 U.S. 152, 167 (1982). Finally, Harper offers *no* evidence that she has suffered from sentence disparity. She has also filed related motions for appointment of counsel, objecting to the government's motion for an order that she has waived attorney-client privilege, and to expedite the court's ruling on her § 2255 motion. (CV dkt. ##7, 8, 12, 15, 21, 23, 25.) For the reasons expanded on below, Harper's motion to vacate her conviction and sentence under § 2255, and all related motions, must be denied.

## BACKGROUND

**I. Investigation**

On January 12, 2021, a Sun Prairie Police Department officer responded to a "suspicious persons" call at the residence of Travis Harper's ("KV") girlfriend. (CR dkt. #42 ¶ 8.) There, the police learned that an individual with the username "Malik8" had paid the equivalent of $1,500 in Bitcoin for the murder of KV. (*Id.* ¶ 22).

On February 5, 2021, the FBI executed a search warrant at Kelly Harper's residence. During an interview of Harper, she admitted to searching the dark web for a hitman-for-

---

² After briefing of Harper's § 2255 petition was complete, Harper filed nine addenda presenting additional authority and argument in support of her claims, as well as additional claims. (CV dkt. ## 13, 13-1, 14, 16, 17, 18, 20, 22, 24, 26.) The court will not address these piecemeal filings, which Harper did not seek permission to file and to which the government did not respond, beyond noting that their contents do not appear to have any merit. Regardless, none of these additional submissions change the outcome of Harper's principal § 2255 challenges.

hire on two separate sites. (*Id.* ¶ 23.) She also confessed to making a $1,500 down payment to avoid getting scammed out of the full, $3,000 price agreed upon with the anonymous hitman. (*Id.* ¶24.) Investigators further asked if Harper would have paid the rest of the money had KV been killed, to which she replied, "depending, yeah." (*Id.* ¶ 25.) The FBI arrested Harper following this confession, and soon thereafter, a grand jury returned a one-count indictment that charged her with using interstate commerce facilities in the commission of murder-for-hire, in violation of 18 U.S.C. § 1958.

## II. Motion to Suppress Confession

On May 26, 2021, Harper's attorney filed a motion to suppress her confession on the grounds that she was in custody and interrogated without the benefit of *Miranda* warnings. Additionally, counsel for Harper claimed that the investigators used coercive tactics rendering her statement involuntary. (CR dkt. #26.) The government then requested an evidentiary hearing, which Magistrate Judge Stephen Crocker scheduled for June 18, 2021.

Before the evidentiary hearing, however, Harper accepted an unconditional plea offer from the government. As a result, that hearing was cancelled and the formal, written plea agreement was filed on June 24, 2021. Specifically, in accordance with Federal Rule of Criminal Procedure 11(c)(1)(C) and 18 U.S.C. § 3553, the parties entered into an agreement binding this court to sentencing Harper to seventy-two months in prison, followed by a three-year period of supervised release.[3] (CR dkt. #30.) The government

---

[3] Harper faced maximum penalties of ten years in prison, a $250,000 fine, a three-year period of supervised release, and a mandatory $100 special assessment.

also agreed to recommend that Harper be housed in a federal correctional facility near her children.

**III. Plea Hearing**

During the plea hearing held on June 24, 2021, the court asked Harper to describe her understanding of the charge in the one-count indictment issued against her. Under oath, Harper responded that she was "being charged with going on the dark web for soliciting murder-for-hire." (CR dkt. #74 at 6.) While accepting her answer as "essentially right," this court further specified that she was being formally charged with *knowing* use of "the internet with an intent to arrange a murder of a known victim, in violation of the law, using consideration of payment, specifically bitcoin." (*Id*.) After Harper confirmed her understanding of the formal charge, and the statutory minimum and maximum penalties that would apply, the court continued with a full colloquy consistent with Federal Rule of Criminal Procedure 11, including reviewing the possible consequences of her pleading guilty, the rights she was waiving by pleading guilty, and the terms of the parties' plea agreement.

Next, Harper agreed that there were no other promises, threats or force used against her to obtain her plea of guilty. Finally, after confirming that the government could prove each of the facts summarized by the government during the plea hearing, Harper confirmed that she was in fact "Malik8" who communicated with others on the murder-for-hire website, and provided roughly $1,500 in Bitcoin, along with a picture of her Bitcoin wallet, to prove she had the funds available for the murder of KV. Accordingly, the court accepted

Harper's guilty plea to the one-count indictment and adjudged her guilty conditionally pending review of the presentence report.

**IV. Sentencing Hearing**

Before sentencing, Harper's counsel filed objections to the presentence investigation report regarding the applicability of the specific offense characteristics for guideline purposes, which ultimately proved irrelevant because the court accepted the terms of the binding plea agreement. Additionally, the government argued in its sentencing memorandum that the agreed-upon, 72-month prison sentence was reasonable in light of the nature of the charged conduct, the characteristics of the defendant, and the need to protect the public from future crimes committed by the defendant. In particular, the government maintained that, regardless of whether the murder-for-hire site was merely a ploy to steal people's money, Harper had demonstrated a clear intent to commit a crime. Finally, although noting Harper's divorce and the lack of evidence surrounding fifteen allegations of child abuse against KV, the government argued that Harper's past theft conviction separately show that she was a danger to her community.

At sentencing, the court calculated Harper's advisory guidelines range at 151-188 months in prison, but noted the maximum statutory penalty of 10 years. In rendering sentence, the court emphasized the evidence that Harper did not act out of impulse, but rather acted in a calculated manner, arranging KV's murder not once but twice by contacting a second site after the first transaction on a murder-for-hire site failed. Given all the facts, the court also expressed little difficulty in accepting the parties' plea agreement

5

binding the court to a sentence of 72 months imprisonment to be followed by three years of supervised release.

Finally, the court advised Harper of her right to appeal the sentence, albeit a limited right due to the plea agreement. Instead of an appeal, Harper filed a § 2255 motion.

OPINION

I. Harper's Motions in her Criminal Case

To begin, Harper has filed several motions challenging her original conviction and sentence and renewing her request for compassionate release.

**A. Rule 35(b) Motion and Motion to Expedite**

Harper seeks a reduction of her sentence under Federal Rule of Criminal Procedure 35(b), contending that she provided substantial government assistance. (CR dkt. #102.) However, only the government may bring a Rule 35(b) motion. *See* Fed. R. Crim. P. 35(b)(1) ("Upon the government's motion . . . ") Harper also argues that because of her age, education, and status as a mother, and because she is a victim of domestic violence and does not consider herself to be a threat to the community, she has suffered a "sentencing disparity," requiring her sentence be reduced to time served.

However, Harper agreed to the imposed sentence by entering into a binding plea agreement. Moreover, before sentencing, the court was aware of her age and education, and had read and considered Harper's detailed statement about her experiences with KV and her children, and her perspective on her conduct. (*See* CR. dkt. ##35, 70 at 15 (noting Harper's "very lengthy statement").) In accepting the binding plea agreement at

6

sentencing, the court also emphasized that regardless of motivation, Harper had made a calculated effort to murder her former husband. Even so, the court imposed a 72-month sentence that was well below the statutory maximum and the sentences of others engaged in similar conduct. Finally, as explained further below, Harper has failed to show a sentencing disparity, and the court will not reduce her sentence further based on factors it has already considered. Accordingly, the court will deny her Rule 35(b) motion (CR dkt. #102) and her motion to expedite (CR dkt. #103).

**B. Motion for Expedited Judgment of Acquittal under Rule 29**

Harper also asks the court to enter a judgment of acquittal expeditiously under Rule 29. (CR dkt. #104.) In support, Harper challenges evidence presented to the grand jury, makes various arguments about her interviews with local and federal law enforcement and about her ex-husband's conduct. She also contends that: the grand jury did not consist of the same number of women as men; government's counsel engaged in prosecutorial misconduct; and the British Broadcasting System violated her constitutional rights.

Generally, Rule 29 motions are brought in the context of a criminal trial and must be raised before submission of the case to the jury or filed no later than 14 days after the verdict or discharge of the jury. *See* Fed. R. Crim. P. 29(a) (before submission to the jury) & (c)(1) (14 days after a guilty verdict or after the court discharges the jury). Obviously, Harper chose not to proceed to trial, and this motion was filed over two years *after* her plea hearing. Regardless, to prevail on a Rule 29 motion, a defendant faces the "nearly insurmountable hurdle" of showing that the record contains *no* evidence from which the jury could have found her guilty beyond a reasonable doubt. *United States v. Torres-Chavez*,

7

744 F.3d 988, 993 (7th Cir. 2014) (citing *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir. 1999)). Harper's grounds for acquittal fall far short of this demanding standard. Plus, she admitted her criminal conduct under oath at her plea hearing, where she also confirmed that (1) no one had threatened or forced her to enter into a binding plea, and (2) the government could prove its case against her. (CR dkt. #74 at 12-13.) Accordingly, the court will deny this motion as well. (CR dkt. #104.)

### C. Motion for Reduction in Sentence

Harper further requests a sentence reduction based on Part B of Amendment 821. (CR dkt. #107.) This provision provides for a retroactive, two-level decrease to the offense level for certain "zero-point offenders" as defined at USSG §4C1.1. However, Harper is ineligible for such relief. As noted above, Harper was sentenced to a 72-month term of imprisonment. At the time of sentencing, her total offense level was 34 and her criminal history category was I. The correctly calculated advisory guideline sentence, as set forth in the revised presentence report at paragraph 80, was the statutory maximum sentence of 120 months. The Statement of Reasons identified the factors this court considered in departing below the advisory guideline range when the sentence was pronounced.

In addition, with respect to Amendment 821 - Part B, Harper's conviction in this case for soliciting the murder of her then-husband constitutes a "crime of violence" under USSG § 4B1.2(a)(1). Thus, her conduct obviously includes the element of "attempted or threatened use of physical force against the person of another" -- intent that a murder be committed in violation of state or federal law. Thus, her relevant conduct precludes her from receiving the two-level reduction sought in her motion. *See* USSG §4C1.1(a)(3).

Finally, Harper cites Amendment 821 – Part A in her motion, but no "status points" were assessed to her criminal history score. Accordingly, she is ineligible for a retroactive sentence reduction under Part B of Amendment 821 and her motion (CR dkt. #107) will be denied.

**D. Third Motion for Expedited Compassionate Release**

Harper next filed a third motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A), along with a motion to expedite. (CR dkts. #109, 114.) The court denied her first two requests for compassionate release because: (1) she did not show that suffering from basal cell carcinoma caused her any limitations, and she admitted that the BOP was treating her condition; (2) no statutory provision permitted "hardship credit" with the additional burdens that a global pandemic put upon all prisons; and (3) her claim that the BOP allowed physical, emotional and sexual abuse to occur was at best vague, as well as too broad, to constitute an "extraordinary and compelling reason" meriting release.

Harper's third motion again lists her basal cell carcinoma and mistreatment by the BOP as grounds for compassionate release. Unfortunately, she provides no updated information from a medical provider showing entitlement to release based on some additional, substantial comorbidity or serious illness, nor any documentation that she requested medical treatment for her basal cell carcinoma and was denied. Harper also fails to provide any evidence that she suffered abuse while in BOP custody. Rather, she once again makes broad generalized statements, such as being "an inmate that doesn't get treated like a human." (CR dkt. #112 at 1.) Accordingly, for the same reasons set forth in the court's first two denials (CR dkt. ##59, 92), Harper's third motion for

compassionate release (CR dkt. #109) and her motion to expedite (CR dkt. #114) must be denied.

## II. Harper's § 2255 Motion and Related Motions

Harper has also filed a § 2255 motion to vacate her sentence. (CV dkt. #1; CR dkt. #67.) Relief under § 2255 may only be granted if there is "an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2007) (quoting *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991)). In this case, Harper challenges her conviction and sentence due to: (1) ineffective assistance of her counsel in abandoning the motion to suppress, (2) prosecutorial misconduct, and (3) a sentence disparity between her and others also convicted under § 1958. The court addresses each challenge in turn below.

### A. Ineffective Assistance of Counsel

To succeed on a claim that the defendant's counsel "was so defective as to require reversal of a conviction," the defendant must satisfy a two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 669 (1984). Harper must first show that the counsel's performance was deficient, and if so, then second show that she was prejudiced by the deficiency. *Id.* However, a deficiency must be viewed through the lens of objective reasonableness at the time counsel made the asserted error, not with the benefit of hindsight. *Id.* Moreover, to prove prejudice, Harper must show "that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

Harper contends that her counsel was ineffective because he failed to pursue a motion to suppress her confession. As an initial matter, Harper's attorney *did* file a motion to suppress, which was only withdrawn by virtue of her plea of guilty, and even then, only if this court accepted the parties' binding plea agreement. The record also shows Harper was aware that she was foregoing her motion to suppress by proceeding under the plea agreement. In addition to discussions with her counsel, after the prosecution summarized the basic terms of the plea agreement, Harper indicated that the summary was consistent with her understanding of the agreement. At no time did Harper express concern about the binding nature of the parties' agreement, nor did she display an interest in conditioning her plea on pursuing the pending motion to suppress. Further, the only evidence that Harper supplied in support of her claim that defense counsel failed to pursue the motion to suppress is a copy of an "unfiled" motion to suppress. However, again, Harper's attorney filed the motion to suppress on May 26, 2021.

Even if the court were to view her counsel's failure to pursue the motion to suppress further as a deficiency, Harper must prove that the proceedings would have been different. In particular, Harper must show a reasonable probability that had the motion to suppress been pursued, she would have succeeded and won the case at trial or on appeal. Harper has not made that showing. The basis of the motion to suppress was that: the authorities interrogated her without reading her *Miranda* rights; and her confession was coerced. However, Harper has provided no evidence suggesting she was already in custody at the

11

time of her confession, nor that her will was overborne to the point that the confession was involuntary. *See Miranda v. Arizona*, 384 U.S. 436 (1966) (Miranda warnings only need to be read while in custody); *Dickerson v. United States*, 530 U.S. 428 (2000) (setting forth due process test for evaluating the voluntariness of confession). Harper also contends that "the only incriminating evidence was [her] honest statement," but this, too, is contradicted by statements made under oath at the plea hearing regarding what the government could have proven. Indeed, after the government recited the factual basis in support of her plea, Harper confirmed that the government could prove those facts. Thus, not only did Harper fail to provide evidence to support the merits of her motion to suppress, she failed to provide any reason why the government would not be able to prove her culpability at trial with or without her confession. For all these reasons, her ineffective assistance of counsel claim fails.

      Harper also argues that after signing the plea agreement, she agreed to help the FBI in reliance on her attorney's assurance that she would receive a 30-50% reduction in her sentence in exchange for her assistance. However, to satisfy *Strickland* in the context of a guilty plea, Harper must show that counsel's advice regarding the plea was objectively unreasonable *and* that there is a reasonable probability that but for counsel's error, she would not have entered a guilty plea but would have gone to trial. *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017); *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, counsel's deficient performance must have been a "decisive factor" in the defendant's decision to enter a guilty plea. *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009) (citing *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007)). To make such a showing, a petitioner's

testimony that she would have insisted on going to trial is not enough on its own; rather, petitioner must present some objective evidence that she would not have entered a guilty plea but for a promise of a further reduction of her sentence based on cooperation. *Koons v. United States*, 639 F.3d 348, 351 (7th Cir. 2011).

The problem here is that plaintiff has no such proof. To the contrary, this claimed promise was *not* part of the plea agreement. Nor did Harper assert it during the plea hearing. Specifically, when the court point-blank asked Harper whether anyone had made her *any* other promises about her sentence, she responded in the negative. So, the court has no basis to credit Harper's assertion that her attorney had promised a further reduction in her sentence in exchange for cooperation. In addition, Harper has not explained why, absent this possible benefit, she would have foregone the plea agreement she had already signed and taken her chances at trial. Accordingly, this claim of ineffective assistance of counsel also fails.[4]

### B. Prosecutorial Misconduct

Harper further contends that she was a victim of prosecutorial misconduct. As a general rule, a petitioner cannot raise a claim of prosecutorial misconduct under § 2255 unless she can show both that: (1) she had cause for not raising the issue on direct appeal; and (2) she will be subject to actual prejudice as a result of the error. *United States v. Frady*, 456 U.S. 152, 167 (1982); *Delatorre v. United States*, 847 F.3d 837, 943 (7th Cir. 2017);

---

[4] To the extent defendant's quarrel is with the government's failure to move for a reduction post-plea and sentencing, her claim may be for breach of contract or promissory estoppel (or less likely, negligence), not to undo the court's finding of guilt or imposition of a biding sentence under § 2255.

13

*McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016); *Henricks v. United States*, No. 13-cr-83-bbc, 2018 WL 791418, at *4 (W.D. Wis. Feb. 7, 2018).

Again, however, Harper offers no evidence as to either of these required showings under *Frady*. At most, Harper references the government's use of false hearsay evidence against her to secure an indictment before the grand jury and in opposition to Harper's more recent motion for compassionate release. Still, Harper makes no attempt to explain her failure to pursue this issue on direct appeal, nor to explain why this is an error that resulted in prejudice. In any event, Harper identified no prosecutorial misconduct. The grand jury has a wide latitude to inquire into violations of criminal law. *United States v. Calandra*, 414 U.S. 338, 343 (1974). It "is unrestrained by the technical procedural *and evidentiary* rules governing the conduct of criminal trials." *Id.* (emphasis added); *see also* Fed. R. Evid. 1101(d)(2) (evidence rules do not apply to grand jury proceedings). Thus, the prosecutor's use of hearsay was perfectly appropriate before the grand jury. Likewise, hearsay rules do not apply to miscellaneous proceedings, including compassionate release motions. Fed. R. Evid. 1101(d)(3). Therefore, her claim of prosecutorial misconduct fails due to procedural default *and* on the merits.

### C. Sentence Disparity

Finally, Harper argues that the court failed to consider the sentences of others convicted under the same statute. Certainly, when imposing a sentence, this court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18. U.S.C. § 3553(a)(6). However, a sentence disparity occurs "when the court relies on things like alienage, race,

and sex to differentiate sentence terms," rather than focusing on the nature of the crime. *United States v. Gonzalez*, 765 F.3d 732, 739 (7th Cir. 2014). Further, sentences *below* the Advisory Guidelines are presumptively reasonable. *United States v. Castro-Aguirre*, 983 F.3d 927, 943 (7th Cir. 2020).

Aside from defaulting on this claim, Harper has not shown that the court's sentence was different than other defendants charged under the same statute, much less that any difference was based on improper considerations. In contrast, the government offers three examples in which defendants convicted under 18 U.S.C. § 1958(a) were given a sentence *greater* than 72 months. *See United States v. Capshaw*, 440 F. App'x 738, 741 (11th Cir. 2011) (defendant was sentenced to 120 months in prison with the same base level offense of 37 as Harper); *United States v Smith*, 358 F. App'x 634, 638 (6th Cir. 2009) (defendant was sentenced to 120 months in prison with the same guideline range as Harper, 151-188 months); *United States v. Davis*, 855 F.3d 587, 593 (4th Cir. 2017) (defendant was sentenced to 120 months in prison with a similar, base level guideline offense). Thus, in each of these cases, the defendant was charged with violating 18 U.S.C. § 1958(a), found guilty at trial, and sentenced to the statutory maximum.

Here, Harper is set to serve 72 months in prison, well below the statutory maximum and the sentences of others engaged in similar conduct. Moreover, Harper's guideline range was determined to be 151-188 months in prison, 79 months *above* her actual sentence. Given that the sentence imposed here was agreed to by the defendant, is below the Advisory Guideline range *and* lower than many similar-situated defendants, Harper has wholly failed to show any sentencing disparity.

**D. Harper's Remaining Motions (CV dkt. ##7, 8, 12, 15, 21, 23, 25)**

The court will briefly address Harper's remaining, related motions. To start, Harper filed a motion objecting to the government's motion to waive her right to attorney client privilege after the court had granted it. (*See* CV dkt. ##6, 7.) Her primary argument cites a case from the Sixth Circuit in which the petitioner alleged a similar promise by the FBI. *Peavy v. United States*, 31 F.3d 1341 (6th Cir. 1994). However, unlike here, the *Peavy* court failed to ask during defendant's plea hearing whether any other promises regarding his sentence were made. Regardless, the court has not considered any privileged communications in its opinion above, so even if she had a legitimate basis to challenge this waiver, it had no impact on the court's resolution of her § 2255 motion.

Harper also filed a motion for appointment of counsel to represent her constitutional rights. (CV dkt. #8.) The court has discretion to appoint counsel for a § 2255 movant where "the interests of justice so require" and the movant is financially eligible. 18 U.S.C. § 3006A(a)(2)(B). In evaluating the interests of justice question, courts consider whether the movant can obtain justice without an attorney in light of her ability and the difficulty of the case, and whether she would have had a reasonable chance of winning with a lawyer at her side. *See Howard v. Gramley*, 225 F.3d 784, 794 (7th Cir. 2000). Harper does not begin to meet this standard. When considering the government's evidence against her, as well as the relatively lenient sentence the court ultimately imposed in accordance with the parties' binding plea agreement, appointment of counsel would not meet the ends of justice here.

Harper next filed a motion alleging that this court has abused its discretion by not ruling on her § 2255 motion, as well as renewing her claims against the prosecutor and her attorney. (CV dkt. #23.) Since the court has now ruled on her § 2255 motion, and as explained above, Harper has not made any of the required showings to bring a claim of prosecutorial misconduct or established that she suffered ineffective assistance of counsel, the court will deny this motion as well.

Finally, Harper filed four more motions asking the court to rule on her § 2255 motion or for a hearing. (CV dkt. ##12, 15, 21, 25.) The court will deny these motions as moot.

E.      **Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[.]" *Id.,* 542 U.S. at 282. For all of the reasons discussed above, Harper has not made that showing. Therefore, a certificate of appealability will not issue. Even so, Harper may seek a certificate from the Court of Appeals for the Seventh Circuit under Federal Rule of Appellate Procedure 22.

ORDER

IT IS ORDERED that:

1. Kelly Harper's Rule 35(b) motion to depart from sentence (CR dkt. #102) is DENIED.

2. Harper's motion for judgment of acquittal after judgment entered and motion to expedite (CR dkt. #104) is DENIED.

3. Harper's motion for reduction of sentence (CR dkt. #107) is DENIED.

4. Harper's third motion for compassionate release (CR. dkt. #109) is DENIED.

5. Harper's motions to expedite (CR. dkt. ##103, 114) are DENIED as moot.

6. Harper's motion to vacate her sentence under 28 U.S.C. § 2255 (CV dkt. #1; CR dkt. #67) is DENIED.

7. Harper's objections to the government's motion to waive attorney client privilege and motion for appointment of counsel (CV dkt. ##7, 8) are DENIED as moot.

8. Harper's motions seeking a ruling and for help (CV dkt. ##12, 15, 21, 23, 25) are DENIED.

9. No certificate of appealability shall issue.

Entered this 23rd day of February, 2024.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge